JANVIER, Judge.
The automobile collision from which this controversy results occurred in the intersection of Saratoga and Perdido Streets, in New Orleans, at about 3:30 o’clock on the afternoon of February 15, 1954. At that time the two streets were of about equal width and crossed at a right angle. The car of plaintiff, U-Drive-It Car Co., Inc., was being operated by Willie J. Dexter on Saratoga Street going in an uptown direction. Charles P. Ward, driving his own car, was on Perdido Street, going in the direction away from the Mississippi River. On Perdido Street, facing Ward as he approached the intersection, there was a Stop sign, as a result of which he was required to bring his car to a stop before attempting to cross Saratoga Street.
On the corner, which intervened between the two cars, was an automobile parking lot and on the lot near the corner was a small building used by the operator of the lot as an office for the collection of parking charges. This building, to some slight extent, obstructed the view of each driver.
The two cars met in the intersection and considerable damage resulted to each. Ward sustained physical injuries.
U-Drive-It Car Company brought this suit against Ward and his liability insurance carrier, Maryland Casualty Company, praying for solidary judgment against them in the sum of $358.74, admittedly the cost of repairing the U-Drive-It Car Company’s car. It alleged that the accident had resulted solely from fault on the part of *707 Ward, charging the following acts of negligence against him: That he did not stop at the Stop sign; that he failed to yield the right of way “to traffic on a through street” and which was approaching from the right; that he failed to recognize that the U-Drive-It car “had preempted the intersection”; that he was driving his car at a speed in excess of that fixed by law, and that he failed to maintain a proper lookout for other vehicles.
Ward and the Maryland Casualty Company answered, admitting the occurrence of the accident and that the said Casualty Company was the liability insurer of Ward. Both defendants denied that Ward had been in any way at fault, and averred that the collision had been caused solely by negligence of Dexter in that he was operating the U-Drive-It car at a speed “in excess of 40 miles per hour, not maintaining a proper lookout”; that he did not have his vehicle under control, and that he entered the intersection after it had been preempted by Ward.
In the alternative that it should appear that there was any negligence on the part of Ward, contributory negligence of Dexter was specially pleaded.
Ward then assumed the position of plaintiff in reconvention, and alleged that the accident had been caused solely by the fault of Dexter as already set forth. He prayed for judgment in reconvention against U-Drive-It Car Company in the sum of $1,-347.93 of which $522.93 was admittedly the cost of repairing Ward’s car and of which the balance, $825, is claimed as compensation for Ward’s physical injuries, medical expenses, etc.
In the First City Court of New Orleans there was judgment dismissing both the main and the reconventional demands. Both Ward and U-Drive-It Car Company appealed from that judgment.
Each driver was alone in the car operated by him and no other eye-witnesses were produced. Ward says that, as he reached the Stop sign on Perdido Street, he brought his car to a stop and, looking to his right, saw the U-Drive-It car approaching on Saratoga Street; that, at that time, the U-Drive-It car “must have been 250 feet away” and that he thought he could safely cross but that when his car was “about half way over” Saratoga Street, it was hit by the other car which, after the impact, “jumped the sidewalk, missed the fireplug, and then hit another car” which was in another parking lot on that corner.
Dexter says that he approached the intersection at a speed of not more than 20 miles an hour, and that he “examined” the intersection to see if there was any traffic and that there was none, that just as he entered the intersection he “looked and seen a car coming” and that he then “hit” the brake just as the Ward car hit the left front fender of his car. He says that he was blowing his horn as he approached the intersection.
Since the U-Drive-It car was approaching from Ward’s right, Dexter would have been entitled to the right of way at the intersection if the two cars reached it at about the same time and at proper speeds. Then, too, Dexter was justified in believing that Ward would stop at the Stop sign which faced him at Perdido Street. He says that Ward did not stop at the sign, but obviously he did not know whether this was true because he said that he did not see the Ward car at all until just as it struck him.
As we view the matter, only questions of fact are involved, and we feel that, when Ward saw the U-Drive-It car, it must have been much nearer to Perdido Street than Ward thought it was, for if it was 250 feet away when he saw it and it struck his car when his car had proceeded a distance of only about 15 feet, a speed of at least 100 miles an hour would have been required to *708 bring it to the intersection in time to strike the Ward car.
We conclude that when Ward saw the car, it was dangerously close to the intersection and that he should have been able to judge its speed sufficiently to realize that he could not cross the intersection in safety.
On the other hand, we have no doubt at all that Dexter was operating his car at a speed considerably in excess of the speed permitted by law. He admits that, after the two cars met in the intersection, his car continued across the intersection at an angle of about 45 degrees, mounted the curb, struck the fireplug (though Ward says that it did not) and crashed into another car on the parking lot on that corner.
Under these circumstances, we conclude that both drivers were at fault and that, without the negligence of either, the accident would not have occurred.
Even if the facts were exactly as stated by Ward, they may be distinguished from those which appear in Thomas v. Checker Cab Company of New Orleans, 229 La. 1079, 87 So.2d 605, confidently relied upon by counsel for Ward. There Thomas, after stopping for a Stop sign and looking to his right and being able to see a distance of only about 100 feet, did not see the taxicab which was approaching from his right. Here Ward not only could see, but did see the other car and should have realized that he could not cross.
The judgment appealed from is affirmed, Ward to pay his costs of appeal, the U-Drive-It Company to pay its cost of appeal and all other costs.
Affirmed.
REGAN, J., absent, takes no part